IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph D. Mellott, : 
          Petitioner : 
           :   No. 798 C.D. 2022
     v. : 
           :   Submitted: April 28, 2023
Department of Labor and Industry, : 
Bureau of Occupational and : 
Industrial Safety, : 
          Respondent : 


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE MARY HANNAH LEAVIT, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: September 8, 2023


        Joseph D. Mellott (Petitioner) petitions for review of the June 30, 2022 order of the Secretary of Labor and Industry (Secretary), adopting the proposed report and order of the Bureau of Occupational and Industrial Safety (Bureau) of the Department of Labor and Industry (Department), that denied Petitioner's application for a waiver of the testing requirements[1] in the UCC training and certification of Code

---

[1] Certification by the Department is required for individuals to perform plan review of construction documents, inspect construction or equipment, or administer and enforce the Uniform Commercial Code (UCC) in Pennsylvania. One requirement for certification is that the applicant must pass an examination in the category in he wishes to be certified. 34 Pa. Code § 401.6 (Certification categories and testing).

Administrators.[2]  It is Petitioner's contention that the denial of his waiver application constituted an unreasonable and unduly oppressive exercise of police powers and a violation of his substantive due process rights.  Upon review, we affirm.

## I.     FACTUAL AND PROCEDURAL HISTORY

Petitioner previously held Pennsylvania UCC certifications in the following disciplines: Commercial Building Inspector, Commercial Electrical Inspector, Commercial Mechanical Inspector, Commercial Plumbing Inspector, Commercial Energy Inspector, and Accessibility Inspector/Plans Examiner.  After moving to Montana in 2015, Petitioner let these Pennsylvania certifications lapse.  Upon returning to Pennsylvania in 2018, Petitioner applied for, and was denied, renewal of his certifications under 34 Pa. Code § 401.8 and a new application for certification under 34 Pa. Code § 401.4.  Petitioner appealed from the Department's denial of his certification and renewal applications.  *See Mellot v. Department of Labor and Industry, Bureau of Occupational and Industrial Safety*, 261 A.3d 599 (Pa. Cmwlth. 2021) (*Mellot I*).  We affirmed.[3]

---

[2] The UCC was promulgated by regulation by the Department pursuant to the mandate of Section 301 of the Pennsylvania Construction Act (Act), Act of November 10, 1999, P.L. 491, No. 45, *as amended*, 35 P.S. § 7210.301.

[3] The issue in *Mellot I* was whether a code administrator whose Pennsylvania certifications have been expired for more than one year may re-apply for a renewal of his certifications under 34 Pa. Code § 401.8, or as a "new" applicant under 34 Pa. Code § 401.4, using the same certification test results he used to obtain his original certifications, or whether the UCC requires him to retake and pass the certification examinations.  Similar to his arguments in this appeal, Petitioner, *inter alia*, took issue with the UCC provisions which he claimed unfairly and unjustly permitted some applicants, who were never certified in Pennsylvania, and who had taken exams prior to 1996, to obtain certification without having to retake examinations, while compelling Petitioner, who was previously certified in Pennsylvania, and had taken his exams in 2006, to retest, simply because he allowed his certifications to expire.  He argued that the disparity violated his right to equal protection.  He also **(Footnote continued on next page…)**

On December 4, 2019, while *Mellot I* was pending in this Court, Petitioner applied for a waiver of the testing requirements pursuant to Section 401.5 of the UCC. Under Section 401.5, the testing requirements of Section 401.6 may be waived if the applicant meets any of the following criteria:

(1) Passed a test substantially similar to the testing categories in Section 401.6 **within the six years prior to July 12, 2002**.

(2) Passed a test substantially similar to the testing categories in Section 401.6 of the UCC **before July 12, 1996**, so long as the applicant submits any of the following to the Department:

    i. Evidence of continued employment as a code administrator in the related field.

    ii. Current certification issued by a model code organization.

---

argued that the one-year retesting rule for lapsed certifications is wholly arbitrary and serves no practical purpose. *Mellot I*, 261 A.3d at 608. We ultimately concluded that the Department acted in accordance with its regulations in requiring Petitioner to retest because his certifications lapsed, and that the requirement that a code administrator retake his certification examinations if his certifications have been expired for more than one year is consistent with the Act, the statute under which it was promulgated, which was to provide standards for the protection of life, health, property and environment, and for the safety and welfare of the consumer, general public, and the owners and occupants of buildings and structures. We further held that requiring an applicant, whose certification had expired for more than one year, to retest in order to renew his certification does not violate the expired certification holder's equal protection rights. *Id.* at 612-13. We explained that there are two separate sets of requirements for two separately situated groups. We concluded that treating applicants differently depending on whether they had previously used the test documentation to obtain certification, and allowed their certification to lapse beyond one year, served the legitimate purpose of ensuring individuals remain qualified to perform inspections. We further concluded that if Section 401.8(d) of the UCC was not given its full effect, applicants for UCC certification could repeatedly submit the same test documentation without completing the continuing education requirements for renewal. *Id.* at 613.

iii. Evidence of completion of 30 hours of continuing education or a college degree program in an associated field.

(3) Passed a certified building official examination.

34 Pa. Code § 401.5 (emphasis added).

In support of his waiver application, Petitioner submitted documentation showing that he passed the examinations to be certified as a Commercial Building Inspector, Commercial Electrical Inspector, Commercial Mechanical Inspector, Commercial Plumbing Inspector, Accessibility Inspector/Plans Examiner, and Commercial Energy Inspector on August 5, 2006, April 29, 2006, September 29, 2006, December 15, 2006, June 20, 2009, and August 18, 2012, respectively. On January 16, 2020, Christina Slaybaugh, administrator of the Bureau's Certification, Accreditation and Licensing Division, notified Petitioner that his application for a waiver of the testing requirements was denied because he had passed each of the examinations **after 2002**. Ms. Slaybaugh informed Petitioner that he was therefore required to take and pass new examinations in order to obtain the desired certifications.

On January 30, 2020, Petitioner appealed the denial, arguing that the basis for denying him a waiver of the testing requirements was "arbitrary and illogically inconsistent" because individuals who passed examinations prior to 1996 were permitted to forego testing while individuals, such as Petitioner, who passed tests after 1996, were required to retake the same examinations. (Reproduced Record (R.R.) at 2a-4a, 73a.) According to Petitioner, permitting individuals who passed older examinations to forgo examinations while requiring individuals who passed newer examinations to retake examinations does not achieve the purpose of the UCC regulations to ensure that certified code administrators are competent and up to date with the UCC standards. *Id.* at 4a.

4

A hearing was held before a hearing examiner on February 10, 2021. Petitioner did not appear or testify. His counsel called the Chief Code Official for the Pennsylvania Municipal Code Alliance, Clem Malot, to testify, in part, regarding the Commonwealth's need for qualified inspectors and Petitioner's qualifications to administer and enforce the UCC. *Id.* at 139a-40a. Mr. Malot testified that Petitioner was a qualified candidate for certification with more than the required hours of continuing education credits for each of the six disciplines in which he seeks to be certified. *Id.* at 141a-42a. Mr. Malot testified that the citizens of Pennsylvania would not be harmed if Petitioner was granted the certifications he seeks; but rather, Pennsylvanians would benefit from Petitioner being certified and able to work as a codes inspector in Pennsylvania again. *Id.* at 144a. Regarding Petitioner's right to waiver of the testing requirements, counsel argued that the waiver provisions, as applied to Petitioner, have no rational relationship to the interest sought to be protected and the purpose of the UCC's training and certification program, and, therefore, they should be struck down. He reasoned that the waiver regulations, which are based on the date that examinations were passed, bear no rational relation to his competency. He further argued that he should be permitted to waive the testing requirements because they violate his substantive due process rights to practice his profession and that he should not be deprived of practicing his profession based upon an irrational and arbitrary requirement that he retest. *Id.* at 92a-93a.

The Department's witness, Ms. Slayburgh, testified that none of the three waiver categories in Section 405.1 address an individual who has taken a test more recently than July 12, 2002. *Id.* at 119a-23a. She explained that the Department enforces the UCC as written and has no discretion to deviate from the regulations to create new waiver exceptions. *Id.* at 128a. Because Petitioner did not pass his

examinations "within the six years prior to July 12, 2002" or "before July 12, 1996," he was not eligible to waive the testing requirements under Section 401.5.

On April 22, 2022, the hearing examiner issued a proposed report, recommending the denial of Petitioner's application for waiver of the testing requirements. The hearing examiner concluded that the waiver provisions in Section 401.5 bear a direct, substantial, and reasonable relationship to the practice of the code enforcement profession and thus have a rational basis and do not violate Petitioner's due process rights. (Proposed Report, 4/22/22, at 11; R.R. at 179a.) On May 23, 2022, Petitioner appealed to the Secretary. By order dated June 30, 2022, the Secretary adopted the proposed report in its entirety and denied Petitioner's application.

Petitioner now petitions for review in this Court.[4] He contends that (1) the waiver requirements in Section 401.5, based on the date of the test taking, violate his due process because they are arbitrary and bear no reasonable relation to the interests sought to be protected, *i.e.*, his competency; and (2) the waiver of examination requirements irrationally restrict his protected right to practice his profession.

## II.   DISCUSSION

The standard for reviewing regulations promulgated to implement a statutory scheme where, as here, the empowering provision of the statute gives the

---

[4] This Court's scope of review of an administrative agency's order is limited to a determination of whether constitutional rights were violated, whether the decision was rendered in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704; *Bologna v. Pennsylvania Department of Labor and Industry*, 816 A.2d 407, 410 n.3 (Pa. Cmwlth. 2003). The Commonwealth Court's review is plenary over questions of law. *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30 (Pa. Cmwlth. 1998). Considerations of constitutionality are questions of law; thus, the Court's standard of review is *de novo* and the scope of review is plenary. *Keystone RX LLC v. Bureau of Workers' Compensation Fee Review Hearing Office (Compservices Inc./AmeriHealth Casualty Services)*, 265 A.3d 322, 329 n.4 (Pa. 2021).

agency broad powers to make such rules and regulations as may be necessary to carry out the statute is whether the regulation is "reasonably related to the purposes of the enabling legislation under which it was promulgated." *Thorpe v. Housing Authority of Durham*, 393 U.S. 268, 280-81 (1969); *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369 (1973); *Pirillo v. Takiff*, 341 A.2d 896 (Pa. 1975); *Adler v. Montefiore Hospital Association*, 311 A.2d 634 (Pa. 1973). Where such regulations are challenged, substantive due process requires:

> A law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained. Under the guise of protecting the public interests the legislature may not arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.

*Gambone v. Commonwealth*, 101 A.2d 634, 637 (Pa. 1954).

In discussing the overall UCC regulatory scheme, we have already held in *Mellot I* that the waiver provisions of Section 401.5 do not apply to Petitioner's situation because he passed his examinations **after July 12, 2002**:

> Chronologically, **the first period concerns those who had taken tests prior to July 12, 1996**. Under section 401.5, those individuals could have sought a waiver of testing requirements if they submitted the proper evidence. **The second period is from July 12, 1996, through July 12, 2002**. Those individuals could have been granted a waiver of testing requirements if they passed a substantially similar test to the testing categories in section 401.6. **The third category is the time period after July 12, 2002**. The regulation does not speak to this time period specifically, however, a plain reading of section 401.4(a) indicates that individuals who do not fall into either one of the previous time periods are

7

subject to the general language of the regulation and must take and pass relevant testing.

*Mellot I*, 261 A.3d at 614 (emphasis added). Thus, Petitioner's testing documentation falls into the third category discussed by this Court in *Mellot I*, and he must submit new test documentation to obtain the desired certifications.

Petitioner nevertheless argues that the periods of time in Section 401.5 governing who must retake previously passed examinations in order to be certified based on a chronology of when those examinations were taken are completely arbitrary. He contends that by requiring individuals who passed examinations more recently than July 12, 2002, to retake the same examinations to be certified, the Department is not achieving the legislative purpose of the regulations to ensure that certified code administrators are competent and up to date with the UCC standards. He submits that it is unreasonable to disqualify him from a waiver because he passed his tests "too recently."

In support of his argument, Petitioner relies on *State Board of Podiatry Examiners v. Lerner*, 245 A.2d 669 (Pa. Super. 1968), to contend that the Department's decision to deny his request for a waiver of the UCC's testing requirements was not related to the state's interest in establishing that licensees are competent. In *Lerner*, an individual practiced podiatry from 1936 to 1952 and was registered annually during that time. *Id.* at 670. In 1953, he notified the state board that he no longer practiced podiatry and filed an affidavit of non-practice in 1955. *Id.* In 1956, the legislature passed an act requiring those who had previously been licensed under the old standards to submit an application and pay a fee before December 31, 1956, to be licensed under the newly passed statute. *Id.* If an applicant missed the window to apply, he or she would have to take and pass an examination to receive a podiatry license. *Id.* at 671. Because he missed the timeframe to apply for a license under the statute, the State

8

Board of Podiatry Examiners determined that Lerner must take a new examination to be licensed to practice podiatry. *Id.* at 670. In upholding the lower court's reversal of the Board of Podiatry Examiners' determination, the Superior Court found that the registration deadline in the statute bore "no discernible relationship to the maintaining of competence" because the application for renewal of registration required only that the applicant provide basic information and enclose a check. *Id.* at 673.

We find *Lerner* to be inapposite because the statute in *Lerner* and the regulation at issue here are not sufficiently analogous such that *Lerner* can guide our analysis. The statute at issue in *Lerner* essentially deprived a podiatrist of the ability to practice his profession simply because he missed an arbitrary filing deadline. That is, timely registration was merely a ministerial function which in no way affected the applicant's license or his suitability for practice.

Unlike the statute at issue in *Lerner*, the UCC's waiver regulations in Section 401.5 were designed to allow the Department to waive the testing requirement for individuals who had taken examinations and had been practicing code administrators prior to the enactment of the UCC.[5] In *Mellot I*, we stated:

> The UCC contains several provisions **that allowed current code administrators to continue their profession, after the effective date of the UCC, without having to meet newly established qualifications to engage in code inspection activities.** For example, then-current code administrators

---

[5] Section 701(d) of the Act authorizes the Department to

> establish a procedure for the consideration of requests for waivers of the initial training and certification requirements for individuals who present documentation that they have previously satisfied substantially similar training, testing and certification requirements. The [D]epartment may also consider past work experience as an inspector when deciding a request for a waiver. Any waiver shall not apply to continuing education requirements.

35 P.S. § 7210.701(d).

9

were given time to meet the training and certification requirements under section 401.15 of the UCC, 34 Pa. Code § 401.15 (Registration of current code administrators). Specifically, then-current code administrators engaged in plan review or inspection of one-family or two-family residential property could continue to engage in inspection activities for three years from the effective date of the adoption of the final form regulations, *i.e.*, until July 12, 2005. 34 Pa. Code § 401.15(a). After three years, if they wished to continue to engage in such activities, they were required to meet the certification and training requirements of section 401.4. *Id.* Current code administrators engaged in plan review or inspection of other buildings and structures that were not one-family or two-family residential structures could continue to engage in inspection activities for five years from the effective date of the adoption of the final form regulations, *i.e.*, until July 12, 2007. 34 Pa. Code § 401.15(b). After the expiration of five years, if they wished to continue to engage in such activities, they were required to meet the certification and training requirements of section 401.4. *Id.*

**Also, under section 401.5, certain applicants could request a "waiver" of the testing requirements if they met certain conditions. Specifically, the Department could waive the testing requirements if the applicant passed a substantially similar certification examination within the six year period prior to July 12, 2002. 34 Pa. Code § 401.5(a). The UCC regulations were adopted on July 12, 2002. Six years prior to July 12, 2002, is July 12, 1996. Thus, the phrase "within the [six] years prior to July 12, 2002" covers the period from July 12, 1996, to July 12, 2002. This exemption provision allowed inspectors who passed a test at any time within the six-year period prior to the effective date of the UCC (July 12, 2002) to continue to engage in inspection activities without having to meet the testing requirements of section 401.6 of the UCC.**

**Contrariwise, if an applicant passed a substantially similar examination during a period that exceeded six**

10

**years from the effective date of the regulations,** *i.e.,* **before July 12, 1996, the Department could waive the testing requirements only if the applicant submitted evidence of continued employment in related fields, current certification from a model code organization, or substantial education in related fields. 34 Pa. Code § 401.5(b).**

261 A.3d at 613-14 (emphasis added).

As intimated in *Mellot I*, Section 401.5 operates essentially as a grandfather clause designed to provide an exception to the testing requirements of the UCC set out in Section 401.6 for certain individuals. In other words, Section 401.5 was intended to protect those individuals who were actively practicing as code administrators, who did not hold the qualifications required for certification. The grandfather provision was intended to be utilized by those current code administrators immediately prior to and after the implementation of the UCC. The purpose of the exception was obviously to protect the jobs of certain persons who had worked as code administrators before the enactment of the UCC regulations, but who could not otherwise meet the newly enacted requirements. Such grandfather provisions are common in the law as a way of ameliorating the harshness of applying new standards to persons already serving successfully in a particular position.

In *Allen v. Department of State, Bureau of Professional and Occupational Affairs*, 595 A.2d 771 (Pa. Cmwlth. 1991), we upheld, as constitutional, a grandfather provision in the context of Section 3(a) of the Certified Public Accountant Law (Law).[6] In that case, Robert Allen (Allen), a self-employed accountant, applied to the State Board of Accountancy for a certificate to practice as a certified public accountant (CPA). His application was denied due to his failure to fulfill a 1-year supervised

---

[6] Act of May 26, 1947, P.L. 318, *as amended*, 63 P.S. § 9.3(a).

experience requirement, even though the Board of Accountancy granted licenses to self-employed public accountants who had not met the supervision requirements under a grandfather provision of the Law, which allowed those persons who held themselves out to the public as public accountants at any time within the six-year period prior to December 8, 1976 (the date of the 1-year supervised experience requirement amendments) to register and obtain a license to practice as a public accountant without examination or supervision requirements. This provision allowed registration with the board as a public accountant during a limited period of 12 months following publication of the one-year supervised experience requirement in the Pennsylvania Bulletin. Allen appealed his denial, arguing that persons who came within the grandfathering provision could take the required CPA examination and, without proof of work supervision or the requisite education, be certified as CPAs. Raising an equal protection claim, he argued that the board inconsistently and unfairly required proof of work supervision for his certification with no similar prerequisite for public accountants who sought certification as CPAs. *Id.* at 773. Rejecting Allen's argument, we reasoned,

> Allen's argument fails because he places licensed public accountants who received their licenses under the grandfathering provision within the same category as persons who never held themselves out to the public as public accountants prior to the change in the Law. The public accountants in practice prior to the amendments would have suffered substantial deprivation of their rights if no provision was instituted to allow them to continue their profession. However, no such right exists when the right to practice a particular occupation or profession has not yet been acquired. *Brady v. State Board of Chiropractic Examiners*, [471 A.2d 572 (Pa. Cmwlth.), *appeal dismissed*, 483 A.2d 1376 (Pa. 1984)].

12

> "When enacting legislation affecting substantial rights, the Legislature need do no more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize themselves with its terms and to take action to preserve their rights." *Heckert v. Department of State, Bureau of Professional and Occupational Affairs*, [476 A.2d 481, 483 (Pa. 1984)]. The one-year period in which public accountants could become licensed was reasonable as it pertained to licensing public accountants in practice prior to the amendments. However, Allen is not in that class. He obtained his "experience" subsequent to the Law's enactment and, therefore, cannot claim he is in the same class with licensed public accountants.

*Id.* at 773-74.

Here, Petitioner raises a substantive due process claim, arguing that it is arbitrary and irrational to limit the applicability of the grandfather provision to individuals who worked as code administrators prior to the enactment of the UCC. There is no merit to this contention. The limitation is reasonable because it seeks to limit the grandfather provision to individuals who had recently been employed for a significant amount of time as code administrators. Limiting the grandfather provision in this way was clearly related to carrying out the rest of the UCC by restricting the number of persons who could avoid the regulation's main testing requirements. This, in turn, was reasonably related to the Act itself by helping "[t]o assure that officials charged with the administration and enforcement of the technical provisions of this act are adequately trained and supervised." 35 P.S. § 7210.102(b)(6).

Testing Section 401.5 against the principles of substantive due process, therefore, we cannot conclude that Section 401.5 is wholly unreasonable and arbitrary and bears no rational relation to the public's interest in ensuring that there was a sufficient number of code administrators that were competent to ensure the safety of our buildings and structures in the few years following the enactment of the UCC. As

explained in *Mellot I*, the waiver of testing requirements was one of the provisions that "allowed current code administrators to continue their profession, after the effective date of the UCC [July 12, 2002], without having to meet newly established qualifications to engage in code inspection activities." *Mellot I*, 261 A.3d at 613-14.

As in *Allen*, the waiver provisions of Section 401.5 simply do not apply to Petitioner. We do not find that to be irrational or arbitrary. Petitioner passed the examinations for the categories he wished to be certified in as outlined in Section 401.6 of the UCC **in 2006**. Because Petitioner passed the tests in which he wished to be certified after the effective date of the UCC regulations, he is ineligible for a waiver and instead falls under the UCC's general provisions for obtaining and renewing certifications. *See* 34 Pa. Code §§ 401.4, 401.6, 401.8, 401.9. In other words, those, such as Petitioner, who took and passed the required examinations **after the passage of the UCC in 2002**, do not need a waiver of the testing requirement because the factual reality of those applicants' situations would be covered by the UCC regulations governing testing for and renewal of certifications. The waiver regulations envelop an additional criterion – that the applicant already be working as a code administrator prior to the UCC's enactment, thereby protecting the rights of those who are already established in the practice of code enforcement to continue their occupation when the UCC took effect. That privilege under Section 401.5 does not extend to those, such as Petitioner, who did not hold certifications in Pennsylvania prior to the establishment of the waiver criteria.

Accordingly, we conclude that the application of Section 401.5 to Petitioner does not violate Petitioner's substantive due process rights. In light of our holding, we need not address Petitioner's second argument that the Department's

14

action in this case violates his right under article 1 section 1 of the Pennsylvania Constitution[7] to pursue his chosen profession.

The order of Secretary is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

---

[7] Article 1 Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. 1, § 1.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph D. Mellott,
          Petitioner

          v.

Department of Labor and Industry,
Bureau of Occupational and
Industrial Safety,
          Respondent

:
:
:   No.  798 C.D. 2022
:
:
:
:
:
:
:

## ***ORDER***

AND NOW, this 8th day of September, 2023, the June 30, 2022 order of the Secretary of Labor and Industry is hereby AFFIRMED.

 

_____
PATRICIA A. McCULLOUGH, Judge